UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KIMMY EVET RIDGEWAY,

**DECISION**

                    Plaintiff,          **and ORDER**


   -vs-                                 **12-CV-6548T**


CAROLYN W. COLVIN, Commissioner of
Social Security,

                    Defendant.

_____


**INTRODUCTION**

    Plaintiff, Kimmy Evet Ridgeway ("Ridgeway" or "Plaintiff"),
brings this action pursuant to the Social Security Act § 216(i) and
§ 223, seeking review of the final decision of the Commissioner of
Social Security ("Commissioner") denying her application for
Disability Insurance Benefits ("DIB") for the period of time from
November 1, 2004 through January 21, 2009. Plaintiff alleges that the
decision of the Administrative Law Judge ("ALJ") is not supported by
substantial evidence in the record and is contrary to applicable
legal standards.

On April 26, 2013, the Commissioner moved for judgment on the pleadings pursuant to 42 U.S.C. § 405 (g) on the grounds that the findings of the Commissioner are supported by substantial evidence. On May 2, 2013, Plaintiff cross-moved for summary judgment seeking to reverse the Commissioner's decision.

For the reasons set forth below, this Court finds that there is substantial evidence to support the Commissioner's decision. Therefore, the Commissioner's motion for judgment on the pleadings is granted and the Plaintiff's motion is denied.

## PROCEDURAL HISTORY

On January 21, 2009, Plaintiff filed an application for DIB under Title II, § 216(i) and § 223 of the Social Security Act, alleging a disability since November 1, 2004 arising from morbid obesity, arthritis, knee and back problems and high blood pressure. T.203.[1] Plaintiff's claim was denied on April 27, 2009. T.81-85. At Plaintiff's request, an administrative hearing was conducted on September 13, 2010 before an Administrative Law Judge ("ALJ"). T.17-44. Ridgeway testified at the hearing and was represented by counsel. In addition, a vocational expert testified.

On October 15, 2010, the ALJ issued a Decision finding that Ridgeway was disabled beginning on January 21, 2009 but not from the

─────────────────

[1] Citations to "T.__" refer to pages from the administrative transcript.

alleged onset date of November 1, 2004. T.52-67. On August 10, 2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's Decision the final decision of the Commissioner. T.1-3. Plaintiff filed this action on October 11, 2012.

## BACKGROUND

Plaintiff is a 50 year old high school graduate with an associate's degree in. T.21, 290. She worked as a home health care aide from 1997 through October 31, 2004 at which time, Ridgeway claims, her employer let her go because she could no longer perform the necessary work. T.21, 22, 204.

Ridgeway was diagnosed with morbid obesity and hypertension and represented that she needed help with household chores because of knee and feet problems as well as a lack of endurance. T.217. In her disability application, she claimed she attended church services four times each week and attended computer classes twice a week. T.219. She noted that she could walk about 20 feet before needing to rest. T.220.

Prior to working as a home health aide, Ridgeway worked as a tax preparer in 1989 and cared for her grandson from September 2002 to 2003. T.225. As part of her responsibilities, she would lift a car seat and the child, which weighed approximately 25 pounds. T.229.

A. <u>Medical History During the Relevant Period</u>

   Plaintiff was treated on June 15, 2004, by Dr. Gregory Denysenko at Wilson Medical Center for a sinus infection with antibiotics. At this appointment, Plaintiff was also advised to control her hypertension. T.316. Ridgeway was first treated by her primary care physician, Dr. Farokh Foroozesh on March 29, 2005, for "increasing abdominal girth" which she was experiencing since December. T.317. Dr. Foroozesh noted that Plaintiff's weight was over 350 pounds. He scheduled Plaintiff for ultrasounds and noted that she had uncontrolled hypertension. T.317. In a document dated May 6, 2005, Dr. Foroozesh indicated that Plaintiff was "not able to work at this time." T.465.

   On June 13, 2005, Dr. Foroozesh noted that Ridgeway did not go for her prescribed abdominal CT but that she reported she felt much better. T.319. She was prescribed medication to control hypertension and advised to lose weight. T.319.

   Plaintiff was treated on December 7, 2005, by Dr. Foroozesh for obesity, hypertension and elevated bilirubin. T.315. Dr. Foroozesh noted that Plaintiff's hypertension was "nicely controlled" and that Plaintiff was trying to lose weight with diet and exercise. He recommended a follow up visit in four months. T.315. On May 1, 2006, Dr. Foroozesh found that her hypertension was controlled but that her weight prevented her from being able to walk more than half a block

without resting. Plaintiff used Lift Line to travel to appointments. T.323.

On January 17, 2007, Ridgeway was treated by Dr. Foroozesh for earaches that had been occurring for months. He also noted that she suffered from obesity and hypertension. According to Dr. Foroozesh, Plaintiff's hypertension was controlled. T.325.

On June 15, 2007, Dr. Foroozesh's medical notes show that Plaintiff's condition remained the same. T.327. He encouraged Ridgeway to see a dietician to reduce her weight. T.327.

In December of 2007, Dr. Foroozesh indicated that Plaintiff was limited in walking, standing, lifting, carrying, pushing and pulling. T.469-470. He noted Plaintiff was able to use public transportation and that she had limited range of motion due to obesity. T.469. Also in December, 2007, Dr. Foroozesh completed a New York State Temporary Disability form which indicated that Plaintiff was "moderately limited" in walking, standing, lifting, carrying, pushing, pulling or climbing stairs. T.477. He saw no evidence of any limitation for sitting, seeing, hearing, speaking or using her hands nor any evidence at all of limitations in mental functioning. T.477. He specifically found that Plaintiff was "able to do light work." T.478.

Plaintiff was treated by a dermatologist, Dr. Dennis Bender, on May 22, 2008, for evaluation of hyperpigmentation and dryness of her

hands as well as shortening of the hair on the left side of her head. T.314. Dr. Bender noted that Plaintiff had not recently seen her primary care provider. He referred her to see her primary care physician and recommended Lac-Hydrin cream for her hands and wrists. T.314.

Ridgeway presented to Strong Memorial Hospital, Strong Health Center with complaints of hypertension on September 2, 2008. T.267. Plaintiff explained that she had a history of hypertension for the last 5 to 8 years but she needed to transfer from Wilson Health Center because she had difficulty with transportation. The treating physician noted that hypertension was poorly controlled possibly from noncompliance with medications and diet. T.267. Plaintiff was advised to lose weight, maintain a low sodium diet and take her medications regularly. Upon follow up two weeks later, the Strong Health records showed that Plaintiff's hypertension was higher than her first visit. T. 265. She failed to fill the prescription for Norvasc that was given to her at the last visit. Again, Plaintiff was advised of the importance to lose weight, take the prescription medication and maintain a low sodium diet. T.265. She was also advised to see a dietician to help her lose weight.

On October 2, 2008, Plaintiff was again seen at Strong Health for follow up care of hypertension. T.263. Plaintiff stated that she forgot to take her medication. She was to be taking Triamterene and

Amlodipine for blood pressure. The medical records again report that Plaintiff's hypertension was "very poorly controlled from noncompliance with medications." T.263 Plaintiff was instructed to take Norvasc daily and to decrease the Aldactone to half a tablet daily. Moreover, Dr. Azalea Noronha warned Plaintiff that if she did not take her medications, she would ask Plaintiff to get another physician. T.263.

Two weeks later, Dr. Noronha reported that Plaintiff's hypertension was well controlled and she completed a form to have Plaintiff obtain New York State Office of Vocational and Educational Services or Individuals with Disabilities VESID training. T.262.

On October 15, 2008, Dr. Noronha completed a New York State Office of Temporary Disability form indicating that Plaintiff was very limited in her ability to walk, stand, sit, lift, carry, push, pull, bend and use her hands. T.473. However, Plaintiff had no limitations in her ability to understand, remember and carry out instructions as well as maintain attention, concentration or make simple decisions. Dr. Noronha assessed that Plaintiff was unable to walk or stand for long periods of time or lift. T.474.

One month later on November 19, 2008, Dr. Noronha reported that Plaintiff's hypertension was not optimally controlled as Plaintiff was not compliant with her medications. T.261. Similarly, in January of 2009, Dr. Noronha noted that Plaintiff's noncompliance was causing

poor control of hypertension. She again emphasized to Ridgeway the need to take her medications daily. T.260.

After months of missed appointments with VESID, Plaintiff's request to reopen her case was granted. T.299. On October 14, 2008, VESID records noted that Plaintiff had a history of obesity and hypertension. T.284. In addition, the report noted that Plaintiff was physically limited in her ability to walk long distances, stand prolonged periods of time and do any prolonged lifting. T.285. A VESID report dated December 29, 2008, noted that Plaintiff had significant medical issues which impact her mobility. VESID agreed that Plaintiff could work part time and agreed with Plaintiff that she apply for SSI and SSDI benefits. T.288. VESID recommended that Plaintiff receive intensive services from Regional Center for Independent Living to assist with applying for benefits and maintaining contact with Social Security to complete the requirements of an application. T.288. In addition, VESID referred Plaintiff for a comprehensive psychological evaluation to assess whether she has a learning disability and also assess her vocational interests. T.290.

A VESID Intellectual Personality Evaluation was prepared by Dr. Michael Baer on January 19, 2009. T.280-283. Dr. Baer noted that Plaintiff presented with obesity, arthritis causing her to use a cane, a cyst on one foot, ankle problems, arthritis in the knees and high blood pressure. T.280. He noted that although Plaintiff was

obese, she appeared neat, had appropriate eye contact, normal speech and movement and a positive attitude with elevated mood. T.280. Moreover, her thought content and memory appeared to be appropriate. T.280. A Wechsler Intelligence Test revealed that Plaintiff was below average in her IQ level, scoring in the 27th percentile for verbal IQ, 14th percentile for Performance IQ and 19th percentile for Full Scale IQ. T.281. He noted that Ridgeway's cognitive strengths were word knowledge and verbal concept formation but non-verbal reasoning and sequencing were cognitive weaknesses. T.281. In the Wide Range Achievement Test, Plaintiff scored strongly in math as well as spelling and sentence comprehension but scored poorly in reading. T.282. Dr. Baer noted that she had visual and motor problems that may explain her poor reading comprehension skills. T.282. He found her to be a "normal acting woman with no major psychological or personality disorders." T.283. He concluded that Plaintiff would work best in areas where she can work with and for people. T.283.

Strong Health medical records dated January 7, 2009 indicate that Plaintiff weighed 384 pounds and had poor control of her hypertension from noncompliance. T.349-350. Dr. Noronha emphasized the need to take medications and reduce her weight. T.350.

B. <u>Medical History after the Relevant Period</u>

Dr. Noronha completed a form for the Monroe County Department of Human Services, Physical Assessment for Determination of Employability on behalf of Ridgeway on February 23, 2009, in which she limited Ridgeway to being very limited in her ability to walk, stand and push, pull or bend. T.479-483. Specifically, Dr. Noronha indicated that Plaintiff could not walk or stand for more than one to two hours and only lift or carry 10 pounds occasionally. T.481. However, there were no limitations for Plaintiff's ability to sit, see, hear, speak or use her hands. T. 481. Dr. Noronha concluded that Plaintiff could work 20 hours per week with reasonable accommodations of no prolonged standing, walking or lifting. T.482-83.

On February 24, 2009, Dr. Sarah Warner treated Plaintiff for dysfunctional uterine bleeding and endometrial thickening since September 2, 2008. T.375, 381-86, 450-60. Dr. Warner did not limit Plaintiff's activities and specifically indicated that Plaintiff had no work or activity restrictions. T.379.  A November 2009 biopsy of endometrium tissue showed neither hyperplasia nor malignancy. T.464.

Plaintiff was examined by Dr. Harbinder Toor, an independent medical examiner, on March 17, 2009. T.387-390. Dr. Toor noted Plaintiff's lifelong history of obesity as well as her more recent history of pain in the back and knees causing her to have difficulty standing, walking, sitting, bending and lifting. T.387. Ridgeway

reported that she was cooking three times per week and doing cleaning as needed. She would shop once a week and was able to dress herself. T.388. Plaintiff weighed 378 pounds at the examination. Plaintiff's cervical spine showed full flexion, extension, lateral flexion bilaterally and full rotary movement. Although Plaintiff had painful movements of the knees, the movements were normal and full. There was no evidence of subluxations, contractures, ankylosis or thickening. T.389. There was no abnormality shown in x-rays of the lumbosacral spine. T.389. Dr. Toor concluded that Plaintiff had moderate limitations for standing, walking and sitting for a long time and moderate to severe limitations for bending, heavy lifting and squatting. T.390.

An independent consultative examination report and Physical Residual Functional Capacity Assessment dated April 22, 2009 by Dr. Tallet concluded that Plaintiff could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand or walk about six hours in an 8 hour work day and sit about 6 hours of an 8 hour work day. T.413. Ridgeway was limited in lower extremities for pushing and pulling. Plaintiff had morbid obesity, arthritis hypertension and knee and back pain. T.413. Plaintiff had difficulty standing, walking, bending, lifting and sitting but used no assistive device to walk. T.413. Dr. Tallet found Plaintiff to be partially credible because she was able to cook, clean and do laundry. T.415.

Dr. Kavitha Finnity conducted an independent psychological evaluation of Plaintiff on April 10, 2009. T.393-396. Dr. Finnity found that Plaintiff's attention and concentration were mildly impaired but that her recent and remote memory skills were intact. T.394. Ridgeway's cognitive functioning was estimated to be average. T.395. She was able to dress, bathe and groom herself as well as cook, clean, do laundry, shop and manage money. T.395. Ridgeway was able to follow and understand simple directions and perform simple tasks, she maintains attention and concentration and maintain a regular schedule. T.395. Overall, the results of the examination were not consistent with any psychiatric problems. T.395.

Dr. Noronha completed another disability form on August 25, 2009 in which she found Plaintiff to be only moderately limited in her ability to walk, stand, push, pull, bend and lift or carry. T.486. Specifically, Dr. Noronha found Plaintiff could do these activities two to four hours in an 8 hour work day. T. 486.

In January, 2010, Dr. Noronha again completed a disability form in which she now opined that Plaintiff could lift or carry 10 pounds occasionally, stand or walk at least two hours in an 8 hour work day, but unable to stand for prolonged periods of time. T.487-488. However, Plaintiff was able to sit for 6 hours, and had unlimited abilities to reach, handle, finger and feel. T.489-490. By July of

2010, Dr. Noronha limited Plaintiff to walking and standing one to two hours. T.495.

On September 10, 2010, Ridgeway was found to be disabled based on her medical diagnosis of hypertensive cardiovascular disease by New York State Department of Health Disability Review Team. T.176. The certificate also noted that Plaintiff suffered from obesity weighing 423 pounds at five feet 10 inches tall and that Plaintiff also suffered from osteoarthritis of the knees and ankle. T.176. O n August 14, 2009, New York State Department of Human Services sent a Notice of Medical Assistance Disability determining Ridgeway to be disabled effective April 1, 2005, until April 30, 2010. T.428.

On September 13, 2010, Dr. Noronha completed an Obesity Residual Functional Capacity Questionnaire regarding Ridgeway. T.433-436. In this document, Dr. Noronha noted that Plaintiff suffered from obesity, hypertension and back pain. T.433. Dr. Noronha indicated that Plaintiff's condition did not interfere with Plaintiff's ability to concentrate or pay attention, and Plaintiff was able to handle stress. T.434. However, Plaintiff was limited to two blocks of walking and standing one hour at a time.  She was able to sit more than two hours but had to walk ten minutes every two hours. T.434-435. Plaintiff could lift less than 10 pounds occasionally and could occasionally twist, stoop and climb stairs.  Dr. Noronha opined that Plaintiff could never crouch or climb ladders. T.435. Dr. Noronha

indicated that the "earliest date" these limitations would apply was 2008. T.436.

B. Plaintiff's Hearing Testimony

Ridgeway testified that she last worked as a home health care aide until October of 2004, when she was laid off because she did not have the strength to do the work such as helping a nurse get a patient in and out of bed and even being able to take the bus to work. T.22. At the time of the hearing, she was living with her mother and brother but also staying with her daughter at times to provide child care help. T.28. Plaintiff was providing day care for her grandson approximately 10 times in May, 2010 and once in July. T.22. She was still providing care for her grandson who was 4 years old at the time of the hearing. T.28.

Ridgeway testified that she fell in 1992 and again in 2001 causing pain in her knees and back as well as in her feet. T.23, 25. Ridgeway claimed to have a problem in a joint in her right hand for the past five years. T.26. She also testified that her diabetic condition causes her to not think as well. T.23-24. Plaintiff acknowledged that her doctor recommended bariatric surgery to reduce her weight but she did not want to do it because of potential complications. T.24. She also testified that cysts that she had on her ovary cause her some pain if she moved the wrong way. T.24.

Ridgeway claims that she cannot walk more than three minutes without holding onto something for support. T.26. With support, she believed she could walk five minutes. T.26. She claimed to be able to lift about five pounds and needs to move around when sitting or her feet cramp up ad feel stiff. T.26. Plaintiff can climb four steps fairly easily and can do more with two rails. T.35. Ridgeway testified that she has a chair with wheels at home to scoot around the kitchen and has difficulty getting up out of any chair requiring some support. T.35.

Ridgeway denied receiving mental health counseling or therapy but finds she has trouble with memory. T.27. Although she is able to follow a story on television, she occasionally cannot remember words when having a conversation. T.27.

On a typical day, Ridgeway wakes up early and does paperwork. T.29. She may do the dishes, and guide her grandson to help clean up. T.29. She attends church three times a week for more than three hours each time. T.29, 34. While her daughter mostly does the cooking, Ridgeway sometimes cooks but needs to do so sitting down. T.30. Ridgeway shops but tries to choose a store that has a mobile cart for her to ride. T.30. Ridgeway often uses a cane for support when she leaves the house. T.33. Although she has a driver's license, Ridgeway had not driven a car in two years at the time of her hearing, opting instead to use a medical motor service. T.36.

C.  Vocational Expert Testimony

A vocational expert ("VE") identified Plaintiff's past work as home health aide as a medium level work. The VE was presented with a hypothetical individual with limitations that required no more than lifting and carrying 20 pounds occasionally and 10 pounds frequently; the option to sit or stand six of eight hours of a work day; no more than occasionally climb, balance, stoop, kneel, crouch and crawl; and is limited to performing unskilled work. T.38. The VE testified that such an individual could not perform Plaintiff's past work. T.39. However, an individual with limitations and vocational factors with Plaintiff's age, education and past work history could, in the VE's estimation, perform light work such as mail clerk and cafeteria attendant or sedentary work such as an account clerk, order clerk, clerical worker, and photocopy machine operator. T.39-40. If the VE were to assume that Ridgeway's testimony was credible and supported by the medical evidence regarding all of her impairments, the VE concluded that there would not be any jobs that she could perform. T.41. Moreover, the VE testified that there is no job that would permit sitting and standing throughout the day at will. T. 43. Finally, the VE clarified that a person in need of an assistive device would not likely be able to perform light work. T. 43.

**DISCUSSION**

I. <u>Scope of Review</u>

Title 42 U.S.C. §405(g) directs the Court to accept the findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Consolidated Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938). The Court's scope of review is limited to determining whether the Commissioner's findings were supported by substantial evidence in the record, and whether the Commissioner employed the proper legal standards in evaluating the plaintiff's claim. <u>Mongeur v. Heckler,</u> 722 F.2d 1033, 1038 (2d Cir. 1983).

Judgment on the pleadings pursuant to Rule 12(c) may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. <u>Sellers v. M.C. Floor Crafters, Inc.</u>, 842 F.2d 639 (2d Cir. 1988). If, after reviewing the record, the Court is convinced that the plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate. <u>See</u> <u>generally</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007).

I.  The Commissioner's Determination of the Onset Date is Supported
by Substantial Evidence in the Record

The ALJ found that Plaintiff was disabled within the meaning of
the Social Security Act as of January 21, 2009.  In doing so, the ALJ
adhered to the Social Security Administration's five step sequential
analysis evaluating disability benefits.  The five step analysis
requires the ALJ to consider the following: 1) whether the claimant
is performing substantial gainful activity; 2) if not, whether the
claimant has a severe impairment which significantly limits his or
her physical or mental ability to do basic work activities;
3) whether the claimant suffers a severe impairment that has lasted
or is expected to last for a continuous period of at least twelve
months, and his impairment(s) meets or medically equals a listed
impairment contained in Appendix 1, Subpart P, Regulation No. 4, if
so, the claimant is presumed disabled; 4) if not, the ALJ next
considers whether the impairment prevents the claimant from doing
past relevant work given his or her residual functional capacity; 5)
if the claimant's impairments prevent his or her from doing past
relevant work, whether other work exists in significant numbers in
the national economy that accommodates the claimants residual
functional capacity and vocational factors, the claimant is not
disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 416.920(a)(4)(i)-
(v).

Under step one of the process, the ALJ found that the Plaintiff had not engaged in substantial gainful activity at any time during the period from her alleged onset date of November 1, 2004. T.55. The ALJ next found that the Plaintiff suffered from the following severe impairments: affective disorder, morbid obesity, hypertension with edema and arthritis. T.55. At step 3, The ALJ found that Plaintiff's impairments did not meet or medically equal the listed impairments in Appendix 1, Subpart P. T.56. Further, the ALJ found that prior to January 21, 2009, Plaintiff had the residual functional capacity to perform unskilled sedentary work but that she could occasionally climb, balance, stoop, kneel, crouch an crawl. T.57. The ALJ next determined that Plaintiff was not able to perform her past relevant work as a home health aide. T.64. Finally, the ALJ determined that considering Plaintiff's age, education, past relevant work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed prior to January 21, 2009. T.65. The ALJ determined that beginning January 21, 2009, considering Plaintiff's age, education, work experience and residual functional capacity, there were no jobs that exist in significant numbers in the national economy that she could perform. T.66.

Plaintiff argues that the ALJ erred by: 1) finding Plaintiff capable of performing unskilled sedentary work prior to January 21,

2009, an arbitrary date; 2) failed to properly evaluate Plaintiff's credibility; and 3) relied on invalid vocational expert testimony. I find that there is substantial evidence in the record to support the ALJ conclusion that the Plaintiff was not disabled within the meaning of the Social Security Act prior to January 21, 2009.

Substantial Evidence in the Record Supports the ALJ's Determination of January 21, 2009 as the Onset Date.

Plaintiff argues that the ALJ erred by setting the disability onset date of January 21, 2009. First, she claims that the ALJ failed to provide a "function by function" assessment of Plaintiff's residual functional capacity ("RFC"). Further, she argues that there is not substantial evidence in the record to support the ALJ determination that she could perform sedentary work. Social Security Ruling ("SSR") 96-8p provides that "the [ALJ's] RFS assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis."

In assessing a claimant's RFC, the ALJ must consider all of the relevant medical and other evidence in the case record to assess the claimant's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. § 404.1545(a)(3)-(4). It is within the province of the ALJ to weigh conflicting evidence in the record and credit that which is more persuasive and consistent with

the record as a whole. See, e.g., Veno v Barnhart, 312 F. 3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)); Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record.")

Here, the ALJ concluded that although Plaintiff had some limitations, the evidence did not support the presence of limitations that would preclude Plaintiff from performing a range of sedentary work prior to January 21, 2009. The ALJ reached this conclusion from a review of all of the relevant medical evidence as well as evaluating Plaintiff's subjective complaints.

The ALJ cited to the regulations that define the exertional requirements involved in sedentary work in his RFC determination. T.57. Sedentary work involves lifting no more than ten pounds and involves limited walking or standing. 20 C.F.R. § 404.1567(a).

The ALJ properly considered the treatment notes which showed that from 2005 through 2009, Plaintiff denied any chest pain, headaches, or difficulty breathing. Her lung, heart and liver examinations were normal, she had no or minimal edema and she was neurologically intact. T. 59-60 Moreover, in December, 2007, Plaintiff's primary treating physician, Dr. Foroozesh opined that Plaintiff was only moderately limited in her ability to walk, stand, lift, carry, push,

pull, bend and climb stairs. T.60, 469, 477. He explained that he thought Plaintiff could perform light work. T.478. The ALJ also points to other medical opinions from 2007 and 2008 which support Plaintiff's ability to perform work at the sedentary exertion level. T.62

The ALJ also considered that the evidence of Plaintiff's daily activities did not demonstrate a significant reduction in Plaintiff's functioning. Plaintiff was not taking her health issues seriously. T.60. She was not being seen regularly by physicians, was treated conservatively and Plaintiff was not properly following medical directions. T.60. The records during these years are riddled with examples of noncompliance by Plaintiff of her medical directions either because she thought the doctors discontinued the medication, or she lost the medications or she simply did not fill the prescriptions. T.60, 263, 265, 319. Moreover, Plaintiff did not keep appointments and even did not return messages from her doctors about missed appointments. T.60.

The ALJ also pointed out that records from 2008 show that Plaintiff was actively seeking employment through VESID, was active in her church, completed the courses for her associate's degree and was helping to care for her grandson. T.60.

The ALJ's Credibility Assessment is Supported by Substantial Evidence

In determining Plaintiff's residual functional capacity, the ALJ considered Plaintiff's statements about her subjective complaints of

pain and functional limitations and found that they were not entirely credible insofar as they pertain to the period prior to January 21, 2009. The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's symptoms, but that Plaintiff's statements regarding the "intensity, persistence and limiting effects of those symptoms are not credible prior to January 21, 2009, to the extent that they were inconsistent with the residual functional capacity assessment." T.59. Plaintiff argues that the ALJ's credibility determination is unsupported by substantial evidence.

"The assessment of a claimant's ability to work will often depend on the credibility of her statements concerning the intensity, persistence and limiting effects of her symptoms." Otero v. Colvin, 12-CV-4757, 2013 WL 1148769, at *7 (E.D.N.Y. Mar. 19, 2013). Thus, it is not logical to decide a claimant's RFC prior to assessing her credibility. Id. This Court, as well as others in this Circuit, has found it improper for an ALJ to find a Plaintiff's statements not fully credible simply "because those statements are inconsistent with the ALJ's own RFC finding." Ubiles v. Astrue, No. 11-CV-6340T (MAT), 2012 WL 2572772, at *12 (W.D.N.Y. July 2, 2012) (citing Nelson v. Astrue, No. 5:09-CV-00909, 2012 WL 2010 3522304, at *6 (N.D.N.Y. Aug. 12, 2010), report and recommendation adopted, 2010 WL 3522302 (N.D.N.Y. Sept. 1, 2010); other citations omitted)). Instead,

SSR 96-7p requires that "[i]n determining the credibility of the individual's statements, the adjudicator must consider the entire case record." SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996); 20 C.F.R. §§ 404.1529, 416.929.

However here, the ALJ measured Plaintiff's credibility by evaluating all of the required factors bearing on Plaintiff's credibility prior to deciding Plaintiff's RFC. She discussed Plaintiff's daily activities, frequency and intensity of Plaintiff's symptoms, Plaintiff's compliance with physician directions and the treatment of Plaintiff's symptoms. The ALJ determines issues of credibility and great deference is given her judgment. <u>Gernavage v. Shalala</u>, 882 F.Supp. 1413, 1419, n.6 (S.D.N.Y. 1995).

The ALJ noted that despite complaints of disabling limitations, Plaintiff did household chores, attended college level courses as well as computer courses and cared for her young grandson. T.60-62. Moreover, she did not take her health care seriously as she failed repeatedly to take the prescribed medications. The ALJ also noted that Plaintiff did not keep appointments and had poor follow-up and did not see a dietician as directed by her doctor on several occasions. T.60, 262, 264, 267, 318.

The ALJ did not discount Plaintiff's complaints entirely. Rather, in assessing Plaintiff's residual functional capacity, the ALJ determined that Plaintiff could only occasionally climb, balance,

stoop, kneel, crouch and crawl, and perform unskilled sedentary work. T.57. Accordingly, Plaintiff's argument that the ALJ failed to properly assess her subjective complaints is rejected.

<u>There is Substantial Evidence in the Record to Support the ALJ Finding that Plaintiff Could Perform Jobs which Exist in Significant Numbers in the National Economy Prior to January 21, 2009</u>

Lastly, Plaintiff argues that the ALJ erred when she relied on the VE in determining that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. T.66-67.

At step five, the burden is on the Commissioner to prove that "there is other gainful work in the national economy which the claimant could perform." <u>Balsamo v. Chater</u>, 142 F.3d 75 (2d Cir. 1998). The ALJ properly may rely on an outside expert, but there must be "substantial record evidence to support the assumption upon which the vocational expert based his opinion." <u>Dumas v. Schweiker</u>, 712 F.2d 1545, 1554 (2d Cir. 1983).

Plaintiff argues that because the VE did not have any experience placing disabled individuals in jobs, he was not qualified to testify as to the number of jobs available in the economy. The VE was properly established as a vocational expert. He had 30 years of experience in his field including Social Security Administration experience. Moreover, no objection was raised at the hearing as to

the VE's qualifications.  Therefore, this Court finds no error in the ALJ relying on the VE's opinion as an expert.

Plaintiff also objects that the hypothetical posed to the VE was incomplete and that it was marred by the ALJ's errors in regard to assessing Plaintiff's credibility and weighing the medical evidence. A VE's opinion in response to an incomplete hypothetical question cannot provide substantial evidence to support a denial of disability. See DeLeon v. Secretary of Health and Human Servs., 734 F.2d. 930, 936 (2d Cir. 1984).

The VE testified at Plaintiff's hearing that a hypothetical individual with limitations that corresponded to the ALJ's RFC assessment could perform the jobs of account clerk, order clerk, clerical worker and photo copy machine operator. T.65.  The VE considered an individual who could not lift more than 20 pounds occasionally and 10 pounds frequently, needed an option to sit or stand six of eight hours of a work day and could only occasionally climb, balance, stoop, kneel, crouch and crawl.  Because there is substantial evidence in the record to support the ALJ's assessment of Plaintiff's RFC, the ALJ is entitled to rely on the vocational expert's testimony that Plaintiff could perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §404.1560(b)(2).

**CONCLUSION**

After careful review of the entire record, and for the reasons stated, this Court finds that the Commissioner's denial of DIB was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the Commissioner's decision is affirmed. For the reasons stated above, the Court grants Commissioner's motion for judgment on the pleadings (Dkt. No. 7). Plaintiff's motion for judgment on the pleadings is denied (Dkt. No. 8), and Plaintiff's complaint (Dkt. No. 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

**S/Michael A. Telesca**

_____

Honorable Michael A. Telesca

United States District Judge

DATED: September 25, 2013

Rochester, New York